THE CHICAGO ANDERSON PRESSED BRICK COMPANY

*v.*

MORRIS REINNEIGER, by his next friend.

*Filed at Ottawa January 18, 1892.*

1. MASTER AND SERVANT—*duty of master to point out dangers to an inexperienced servant.* Employers owe it as a duty to inexperienced servants to point out the dangers of which they themselves have or ought to have knowledge, and to give such warnings as may lead to the avoidance of injury by the exercise of ordinary care. More especially is this so when the danger and the means of avoiding it are not apparent or fully within the comprehension of the servant. But the burden is upon the injured servant to prove the existence and breach of such duty.

2. SAME—*hazard to minor servant—duty of master to instruct concerning.* It is a general rule that when a contract of employment is made with a minor, he assumes the ordinary hazards of such employment in the same manner as an adult assumes them. But the rule is modified in case of young persons of inexperience and immature judgment, who are not capable of understanding and appreciating the perils to which they are exposed. They are entitled to recover for injuries which result from such perils, unless they have been instructed how to avoid them.

3. If it is the duty of the master to give a minor whom he takes into his service, such instructions and precautions, graduated to his youth, ignorance and inexperience, as are necessary to make him aware of his danger, and to place him in the same situation with reference to it as though he was an adult, then it must be made to appear that such minor understands, as well as that he has the capacity to understand, before he can be denied the right of recovery.

4. SAME—*action by servant against master—instruction as to intelligence and experience of servant.* In an action by a servant against his employer, to recover for an injury while employed in operating machinery in making brick, the court modified certain of the defendant's instructions by adding to the requirement that plaintiff had sufficient intelligence to comprehend the movements of the machine on which he was working, the further requirement that he knew and understood and appreciated the same: *Held,* that the modification was not erroneous.

5. In an action by a minor servant to recover damages for personal injury received in his service, the court instructed the jury that if the

defendant company and its officers knew or had reason to know the danger and peril to which the plaintiff was and would be exposed while in his work or employment, and did not explain or give notice of such danger to the plaintiff, and that at the time of the injury the plaintiff was not guilty of negligence, and was exercising ordinary care, and that from his youth and inexperience he failed to know, understand or appreciate, and in fact did not so know and appreciate, the danger to which he was exposed, in consequence of which he was injured, then the defendant was liable : *Held,* that the instruction was not erroneous, as assuming the machine used was a dangerous one.

6. In the same case the court modified one of defendant's instructions which announced that if the plaintiff, in the exercise of ordinary care and caution, might have seen the danger and avoided it, and his omission to do so directly contributed to the injury, he could not recover, by stating to the jury that in determining what was ordinary care on the part of the plaintiff they might take into consideration his age, intelligence and discretion, and his knowledge of or experience with machinery, etc.: *Held,* that the effect of the modification was not to tell the jury that want of intelligence and discretion on the part of the servant would excuse contributory negligence on his part. The same degree of care is not expected of a mere boy as is required from a person of mature years.

7. SPECIAL INTERROGATORY—*refusing to submit.* There is no error in refusing to submit special interrogatories to the jury, when it is plain that the most favorable answers that could be made to them would not constitute a finding inconsistent with the general verdict.

8. EVIDENCE—*action for personal injury—proof of prior similar accidents.* In an action by a servant to recover for a personal injury in the use of machinery, the defendant introduced evidence to the effect that it was not possible for the injury to have occurred as stated by the plaintiff. The latter, in rebuttal, may show that similar occurrences had happened in the same way as with the plaintiff. He may show that the injury in the way claimed was not only possible, but had actually taken place.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. FRANK BAKER, Judge, presiding.

Mr. S. M. MILLARD, Mr. A. C. BARNES, and Mr. HIRAM BARBER, for the appellant.

Messrs. FREEMAN & WALKER, for the appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action for damages for a personal injury brought in the Circuit Court of Cook County by Morris Reinneiger, a boy who sues by his next friend, against the appellant, the Chicago Anderson Pressed Brick Company. The trial below resulted in a judgment for $3000.00 for the plaintiff, the appellee here; and the judgment has been affirmed by the Appellate Court.

The injury occurred on November 17, 1888, while appellee was in the employ of the appellant company. On that day he was at work upon one of appellant's brick machines, when his hand was caught by a part of the machine and so crushed as to necessitate an amputation of the arm below the elbow.

A portion of the brick-pressing machine consisted of a circular table or disc, which revolved horizontally around its center. In the table are eight pairs of molds, which receive the clay from which the bricks are made. As the table revolves on its center, the molds are brought under a spout, from which the pulverized clay is dropped into them as they pass successively under it. About eleven or twelve inches from the feed-spout is the frame, made of an upright casting of heavy iron, containing what is called the "plunger." The plunger is a heavy iron or steel beam, impelled by steam, sliding up and down within the frame, and fitting into the mold beneath, into which it descends with great power, and forms the bricks by pressing the clay into the molds. Each mold, after passing under the spout and being there filled with clay, passes on under the plunger. The boy was required to oil and insert a piece of metal called a "gib," used to give an ornamental shape to the brick, into the empty mold before it reached the feed-spout, and then to step into the space between the feed-spout and plunger, and with his hand brush off the superfluous clay from the mold, after it left the feed-spout and before it reached

the plunger. During these operations, the table had an intermittent rotary motion, stationary during the feeding and pressing, and then revolving on to the right to bring the next pair of molds into proper positions for being filled and pressed.

It is claimed by the appellee, that his hand, while he was engaged in removing the surplus clay from the mold and pressing what was left to make it even, was carried forward under the frame and thence on under the plunger, and that the danger of the hand being thus caught was inherent in the mode of operating this kind of a machine, and that the hand was particularly liable to be caught in the machine on which the boy was at work, because of its alleged defective character. On the other hand, the appellant claims that the boy must have reached around to the opening in the frame, and placed his hand under the plunger with the idea that he could remove it before the plunger descended.

The plaintiff did not request the giving of any instructions, but the court gave an instruction of its own motion, a portion of which is claimed by the appellant to have been erroneous. By it the jury were told that, if a boy, employed in a factory where dangerous machinery is in use, "is of sufficient age, intelligence and discretion to understand and appreciate the risk to which he is exposed, and if he is informed of the dangerous nature of the work in which he is engaged, then he must be held to have assumed the ordinary hazards and perils of such employment, and cannot recover for an injury which is the result of the ordinary peril and danger of his employment."

We think that the instruction correctly states the law. (*Hinckley* v. *Horazdowsky*, 133 Ill. 359; *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572; *Grizzle* v. *Frost*, 3 Frost & Finl. 622.) It is a general rule, that, when a contract of employment is made with a minor, he assumes the ordinary hazards of such employment in the same manner as an adult assumes them. (*Gartland* v. *Toledo, etc.; R. Co.* 67 Ill. 498.)

22—140 ILL.

But the rule is modified in case of young persons of inexperience and immature judgment, who are not capable of fully understanding and appreciating the perils to which they are exposed. They are entitled to recover for injuries which result from such perils, unless they have been instructed how to avoid them. Employers owe it as a duty to such inexperienced servants to point out the dangers of which they themselves have or ought to have the knowledge, and to give such warnings as may lead to the avoidance of injury by the exercise of reasonable care. More especially should this duty be performed where the danger and the means of avoiding it are not apparent, or fully within the comprehension of the servant. 1 Shear. & Red. on Neg. (4th ed.) secs. 218, 219.

Whether the plaintiff below was such a person as was entitled to demand of the defendant the performance of the duty here indicated, and whether the defendant actually discharged its duty towards him in this regard, were matters for the jury to determine from all the facts and circumstances of the case. The burden was upon the plaintiff to prove the existence and breach of such duty. (*Sullivan* v. *India Manfg. Co.* 113 Mass. 399). None of the instructions given hold that the burden of proof in this respect was not upon the plaintiff. Nor do we agree with counsel for the appellant, that there was no testimony in the case which justified the submission to the jury of the question, whether or not plaintiff was entitled to a modification in his favor of the general rule above stated.

The evidence tended to show that appellee was only sixteen years old; that he had worked for appellant about a year in 1887 and 1888, but only five or six times upon a machine like this; that he had not been hired for any particular service, but, with the exception of the five or six times aforesaid, had been at work as a common laborer wheeling brick in a wheel barrow from the press to the kiln and cleaning them; that at the end of the year he had left appellant's service and remained away three or four months; that he had only been at

work for appellant about three weeks after his return before the accident; that he had not been put at work upon the machine which caused the injury, until the day the accident occurred, and had only been so at work for a very short time before the accident; that there was space enough between the bottom of the frame and the surface of the table for the hand and wrist to pass under the frame; that this particular machine had a "jerky" motion, not noticed in others of the same manufacture, so that it would suddenly pull the mold and the hand upon it under the frame; that the "gib," in use when the accident occurred, was of a larger size than the "gibs" which the plaintiff had handled before, and required the removal of a greater surplus of clay; that the space between the feed-spout and the plunger was only about eleven or twelve inches, so that plaintiff could not stand in front of the table but was obliged to stand with his side to it; that within the space of ten or fifteen seconds, while the mold with the "gib" in it was passing from the feed-spout to the plunger, the boy was required to remove about two handfuls of clay from the mold and press the remainder evenly in the corners, judging by the eye of the exact quantity to be removed, so that the brick should not be spoiled when pressed by the plunger; that the boy was put at work upon the machine in question on the day of the accident by appellant's foreman; that appellant's pressman had charge of the machine and managed it while it was running; that the pressman was supposed to keep his eye on the boy and to see that he did not get into danger; that the pressman told the boy to look out and be careful and not get too close to the plunger, and to take his clay out in time; that, if a pressman left a machine "for a minute or so," he would tell the boy at work to be careful; that plaintiff was not allowed to move the lever to stop the machine; that just before the accident, while the machine was in motion and the plaintiff was at work, the pressman told him that he was going to dinner, and after he had turned his back upon the machine and taken three or four

steps the accident occurred; that the disc performed a revolution in one minute and fifty-five seconds, turning a brick out of the push-out at the opposite side from the feed-spout at the end of every revolution; that only five or six bricks had been turned out when the injury was inflicted. While the evidence tends to show, that certain general cautions and instructions were given to the boy as to the use of the machine, yet it does not show that he was informed of the extra labor made necessary by the use of so large a "gib," or of the tendency of this machine to move with a jerk, so as suddenly to pull the mold under the frame.

The portion of the instruction given by the court of its own motion, which followed the quotation above made from it, was authorized by the evidence, and correctly set forth the principles of law applicable thereto. It was as follows:

"In this case, if you believe, from the evidence, that the plaintiff, at and before the time of the injury, knew and appreciated the danger and peril of the work in which he was engaged at the time of the injury, and understood the same, and then chose to engage in the work which exposed him to such perils and danger, he cannot recover, and your verdict should be, not guilty. And in determining the question whether or not the plaintiff knew, appreciated and understood the perils and dangers of the work in which plaintiff was engaged, you will consider the evidence as to plaintiff's age, as to his previous experience with the machine in question or similar machinery, and all other evidence bearing upon said issue. If, on the other hand, you find and believe, from the evidence, that the defendant company and its officers knew, or had reason to know, the peril and danger to which plaintiff was and would be exposed while in the work and employment in which he was engaged at the time of the injury, and did not explain or give notice of such danger or peril to the plaintiff, and if you further find that at the time of the injury the plaintiff was not guilty of negligence and was exercising ordinary

care, and that from his youth and inexperience he failed to know, understand or appreciate, and in fact did not know, understand or appreciate, the risk or danger or peril to which he was exposed in the work in which he was engaged at the time of the injury, and that in consequence he was injured, then the defendant is liable, and you should find the defendant guilty."

We do not think the instruction is erroneous as assuming that the machine was a dangerous one. It assumes that the work, upon which appellee was engaged, was attended with hazard and danger, but only in the sense, in which any employment, requiring the use of heavy machinery propelled by steam, is hazardous. It is true, that appellant introduced some testimony to show that 'the act of removing the superfluous clay from the mold was not necessarily attended with difficulty or danger, but it was admitted that there was danger in being near and working upon such machinery as was here in use. The appellant proved, that its foreman and pressman were in the habit of warning the boys to keep out of "danger." The very theory, upon which both sides tried the case and asked instructions, namely, that the employe assumes the "ordinary hazards and perils" of his employment, implies that such "hazards and perils" exist.

The court modified an instruction asked by the defendant which announced that, if the plaintiff, in the exercise of ordinary care and caution, might have seen the danger and avoided it, and his omission to do so directly contributed to the injury, then he was guilty of such negligence as would prevent a recovery—by stating to the jury, that, in determining what was ordinary care on the part of the plaintiff, they might take into account his age, intelligence and discretion and his knowledge of, or experience with machinery, etc. Appellant claims that, by the modification, the jury were told that want of intelligence and discretion on the part of the appellee would excuse contributory negligence on his part. Such was not the effect

of the modification, especially when read in connection with the other instructions which were given. The same degree of care is not expected or required of a mere boy of inexperience and immature judgment, as is required from a person of mature years. (*C. R. I. & P. Ry. Co.* v. *Eininger,* 114 Ill. 79.) The modification could not have done the defendant any injury in view of the fact, that the court gave at the request of the defendant the following instructions:

1. "The court instructs the jury, that the burden of proving negligence rests on the party alleging it, and where a person charges negligence on the part of another as a cause of action, he must prove the negligence by a preponderance of evidence; and in this case, if the jury find that the weight of the evidence is in favor of the defendant, or that it is equally balanced, then the plaintiff cannot recover, and the jury should find the issues for the defendant.

2. "The court instructs the jury, that where a person has attained such an age as to be capable of exercising judgment and discretion, he is held to such a degree of care as might reasonably be expected of one of his age and mental capacity. And the simple fact that a minor, however young, has been injured by another, or while in his employ, does not cast liability on the latter. It must further appear that the latter was guilty of negligence or some wrong in violation of a duty to the minor, and that the injury proceeded therefrom, otherwise the child can have no compensation for such injury.

3. "If the jury believe, from the evidence, that the plaintiff, previous to undertaking the kind of work in which he was engaged at the time of the injury, was cautioned and advised by the defendant, or one of its servants, of the dangers involved in such work, and that the plaintiff, at the time of such injury, had attained such age as to be capable of exercising such judgment and discretion as to know and avoid such dangers, and that the plaintiff then undertook to do such work, and

was injured by disregarding the instructions and advices he had received, the plaintiff cannot recover."

Appellant also assigns as error, that the court modified the 5th, 6th and 7th instructions asked and given for the defendant by adding to the requirement, that plaintiff had sufficient intelligence to comprehend the movements of the machine on which he was working, the further requirement that he knew and understood and appreciated the same.   The modification was not erroneous.   Such knowledge on the part of the infant servant necessarily results from the explanation, which it is the duty of the master to give him, of the hazards and dangers connected with the business.   If it is the duty of the master to give the infant, whom he takes into his service, such instructions and precautions graduated to his youth, ignorance and inexperience, as are necessary to make him aware of his danger, and to place him in the same situation with reference to it as though he was an adult, then it must be made to appear that such infant understands, as well as that he has the capacity to understand, before he can be denied the right of recovery.   (2 Thompson on Neg. page 977).   Of course, it will·be assumed that he understands if he has been instructed, but he may have the capacity to understand and yet may never have been instructed.   Such is the doctrine of the text books.   "It is the master's duty to warn him (the servant) of any danger incident to the business, and if, *with such knowledge,* he chooses to assume the risk and is capable of appreciating the hazards   *   *   *   the master is then absolved from liability for injuries resulting from the ordinary hazards."   (Wood's Master and Servant, sec. 349, page 718).   "The master must warn such young servants against the dangers, to which their employment exposes them, and he must put this warning in such plain language as to be sure that they *understand* it and *appreciate* the danger."   (1 Shear. & Redf. on Neg.—4 ed.—sec. 219).

There was no error in refusing the instruction as to the right of recovery under the first count of the declaration, because it assumes that the plaintiff was directed to remove the clay from the molds by the *foreman*. The foreman ordered the plaintiff to go to work upon the machine, but the directions as to the details of the work were given to him by the *pressman*, who had charge of the machine. The instruction was calculated to confuse the jury by attributing to the foreman what had been done by the pressman; and it incorrectly represents the first count as designating the foreman alone, whereas it refers to "a certain then foreman *or servant* of the defendant." There is the same objection to the instruction as to the right of recovery under the second count. Both these instructions are also objectionable as singling out, each of them, a single circumstance as constituting a basis for the right of recovery, and giving such circumstance an undue prominence over all the other facts disclosed by the testimony. Such instructions have often been condemned by this court.

There was no error in refusing to submit to the jury the written questions of defendant's attorneys calling for special findings of fact, because it can be seen, that answers to said questions most favorable to the defendant would not have constituted a finding inconsistent with the general verdict. (*C. & N. W. Ry. Co.* v. *Dunleavy*, 129 Ill. 132).

It is claimed, that the court erred in admitting certain testimony introduced by the plaintiff upon the rebuttal. Witnesses for defendant had sworn, that the boy's hand could not have been drawn under the framework encasing the plunger in the manner stated by him, mainly upon the alleged ground that there was not space enough between the bottom of the frame and the surface of the disc to admit the hand. The testimony offered in rebuttal was that of other workmen, who had worked upon that machine or a similar one, and who swore that the hand could be drawn, while remaining in the mold, sideways under the framework to the plunger, and that

such occurrences had actually taken place. We do not see why the evidence was not competent, as being in rebuttal of what defendant had sought to show as to the impossibility of receiving the injury in the manner claimed by the plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*