Heusner Baking Co. v. Trakal.

107    327
a204s  179

## The Heusner Baking Company v. Joseph Trakal.

1.  MASTER AND SERVANT—*No Duty Rests upon the Master to Warn Where the Servant Knows the Danger as Well as the Master.*—When the servant knows the danger attendant upon the use of a machine as well as does the master, the latter is not charged with the duty of warning him.

2.  SAME—*Servant Assumes the Ordinary Risks of the Employment.* —The master is not liable to the servant for injuries which result from dangers which are ordinarily incident to the employment, and which are known and understood by the servant.

Trespass on the Case. for personal injuries.    Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding.    Heard in this court at the October term, 1902.    Reversed. Opinion filed March 30, 1903.

Appellee, a baker by trade, aged fifty-five years, was injured while in the employ of appellant.    His hand was caught between two iron rollers of an appliance used for mixing dough.    This dough mixer was a machine made up

of two cylinders, like the cylinders of a common wringing machine used on a washtub. They were in positions parallel to each other, about one half inch apart. These two cylinders occupied such a relative position that a line passed through their axes would be at about an angle of forty-five degrees from the horizontal. They were about two feet long, and three or four inches in diameter. The dough was placed upon a slanting board back of the cylinders, on which it slid down by gravitation, upon the cylinders at their line of articulation. The cylinders revolved by steam power in the same directions as do those of the washtub wringer, and drew the dough through between them, dropping it down below upon a horizontal board, where the workman, standing in front of this board, would pick it up in his hands and throw it over the top of the cylinders back on the slide board, where it would pass through between the rolls again, and again be picked up by the workman, and the operation repeated until the dough was sufficiently mixed. The top of this mixing machine, that is, the top of the cylinders, was about three and one-half feet from the floor. Over the top of the higher cylinder was a guard which prevented the arms of the workman from coming in contact with the cylinders. This mixing machine was supplied with a belt shifter, by which it could be stopped or started at the will of the workman. During the eight months that Trakel worked at this bakery, he worked in the same room where the machine was, about two and one-half hours each day; and before commencing to work for appellant, Trakal had worked in another bakery at Freeport, Illinois, where they had a similar machine. However, he had not operated this kind of machine himself but a portion of two days, the day of his injury and the day preceding. Plaintiff states that on the day preceding the accident the man who usually worked on the dough machine was absent on account of sickness, and plaintiff was told to take his place. He thereupon, without complaint or protest, went over to the mixing machine, took hold of the belt shifter, started the machine in motion, brought over

Heusner Baking Co. v. Trakal.

his dough, mixed it, again took hold of the belt shifter, stopped the machine and carried away his mixed dough. The next day he was again told to use the dough mixer, and he again went over to the machine, which was standing still, took hold of the belt shifter, and started the machine in motion by shifting the belt, then noticing that on the slide board, at a point one and one-half feet away from the rolls, there was some dirt or water which he feared might pollute the dough, he took a little scraper which belonged to the machine and, without shifting the belt or stopping the machine, reached over the top of the rolls and began scraping the dirt off the slide board. While doing this, from some unexplained cause, his hand passed through the space of one and one-half feet from the point where he was scraping the dirt to the line of articulation between the cylinders, at which latter point it was caught by the cylinders, drawn between them and was injured. These cylinders moved at the rate of sixty to seventy revolutions per minute; their motion created no perceptible draft or suction, not even enough to disturb the dry flour upon the slide board. No other part of this machine moved while it was in operation except these cylinders.

The declaration alleged that appellee (plaintiff below) was a baker in the employ of appellant, but was not familiar with this dough mixer, which appellant well knew, or ought to have known; that the foreman of appellant directed him to work upon this machine, but neglected to instruct him in its use or to warn him that it was dangerous; and that while working therewith, while in the exercise of due care, from his want of skill in its operation and his ignorance of its dangers, his left hand was caught between the cylinders and was crushed, etc.

At the close of plaintiff's case the defendant moved the court to exclude the evidence and to instruct the jury to find the defendant not guilty. The court denied such motion, and the defendant took exception thereto.

At the close of all the evidence the defendant renewed its said motion, and presented to the court a written in-

struction to find the defendant not guilty, and asked the court to give the same to the jury, which the court refused to do; to which action the defendant duly excepted. The jury returned a verdict for the plaintiff and assessed his damages at the sum of $3,500. From the judgment entered upon that verdict this appeal was perfected.

O. W. DYNES, attorney for appellant.

LEOPOLD SALTIEL, attorney for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Appellee is admittedly a man of intelligence. He had followed his trade as a baker for thirty-eight years. The machine was wholly within his control. When he desired to start it he moved the shifter, which was just at his right, to throw the belt on the machine pulley; if he wished to stop it, he moved the shifter in the opposite direction to throw the belt off. As he stood at work, right before him was a small horizontal table upon which the dough fell as it oozed out from between the cylinders. Over the further side of this table and about eighteen inches above it stood the two cylinders. The higher one, protected above by an iron guard, was the nearer to him. Back of these cylinders, coming down to the space between them, was a slide board, inclined at an angle of about forty-five degrees. It was three feet long and two feet wide. Its surface was smooth. Anything placed thereon would slide toward the cylinders. Just before he was hurt appellee had started the machine. He then saw a spot of dirt or of dirty water about the middle of the slide board, and, without stopping the machine, he reached over the cylinders and attempted to remove it with a small scraper which lay on or by the machine. There was then no dough, or anything other than this spot upon the surface of the slide. That surface was motionless. The cylinders were then in motion. The only point of danger in their motion was where they came near together, which point was eighteen inches distant

from the dirty spot appellee was about to remove. How or why appellee's hand traversed the distance from that spot down to the point of danger, is not shown. Even appellee does not seem to know. There was nothing to catch his hand upon the slide board. There was no suction or draft to draw his hand into danger. The top guard prevented his arm from coming into contact with the cylinders. The machine was neither defective nor out of order.

The declaration charges that appellee did not know that this machine was dangerous, and that appellant did not warn him in that regard. The evidence shows that he knew that if his hand was caught between the cylinders it would be hurt. That point was the only point of danger, and was obvious to him. He knew how to start and to stop the machine. Appellant was not charged with the duty of warning him against a danger which was open and apparent, and which he knew. The only object of such an instruction is to point out to the servant the source of danger, so that he may avoid it. When the servant knows the danger as well as does the master, the reason which calls for the warning is wanting, and hence the duty to warn does not arise. It follows it was not negligence upon the part of appellant to fail to warn appellee of the dangers incident to the use of this machine. This principle is elementary. It is so plain that it does not require the citation of authorities *in extenso*. Doolittle & Pfaff, 92 Ill. App. 301, and cases cited; Groth v. Thomann, 110 Wis. 488, and cases cited.

If we look at this case from the point of assumed risk the result is the same. The master is not liable to the servant for injuries which result from dangers which are ordinarily incident to the employment, and which are known and understood by the servant. Jones v. Roberts, 57 Ill. App. 56; Howe v. Medaris, 183 Ill. 288; Herdman-Harrison M. Co. v. Spehr, 145 Ill. 329.

In order to take the case out of this general rule, it was incumbent upon appellee to show that he was ignorant of

the peril and of the means of avoiding it. Not only has he not done this, but it affirmatively appears that he did know both the danger and what was necessary to be done or to be avoided to escape it.

A careful study of the record in this case brings us to the conclusion that the trial court erred in refusing to instruct the jury at the close of all the evidence to return a verdict of not guilty. This conclusion renders it unnecessary for us to discuss other points raised by counsel.

The judgment of the Superior Court will be reversed without a remanding order.